**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

No. 97-20099
Summary Calendar

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

VERSUS

JORGE GUSTAVO MARTINEZ,

Defendant-Appellant.

Appeal from the United States District Court
For the Southern District of Texas
(H-96-CR-152-7)

September 18, 1997

Before WISDOM, DUHÉ, and BARKSDALE, Circuit Judges.

PER CURIAM:[*]

Following a jury trial, Jorge Gustavo Martinez was found guilty of conspiracy to possess with intent to distribute cocaine and possession with intent to distribute cocaine in violation of 21 U.S.C. §§ 846 and 841 (a) (1). In this appeal, Martinez challenges the sufficiency of the evidence to support that verdict. After a thorough review of the record, we find the jury's verdict is supported by the evidence. Therefore, we AFFIRM.

[*]Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

I.

From late 1995 through July 1996, the Houston High Intensity Drug Trafficking Area task force ("the task force") undertook an extensive investigation that led to the convictions of Martinez and several others. Martinez surfaced as a suspect in the conspiracy during the task force's investigation of Donaciano Rojas.

Sergeant Longoria, a task force agent who posed as a cocaine buyer from New Orleans, first met Rojas in January 1996 at a meeting arranged by an informant at the Days Inn in Beaumont, Texas. After discussing the details of a drug sale, including the price and quantity of cocaine that could be delivered, Sgt. Longoria and Mr. Rojas agreed to an initial sale of one kilogram of cocaine as a show of trust. The two men had several more meetings and conversations before February 7, 1996, the date of the sale.

Martinez first came to the task force's attention shortly after 11:00 A.M. on February 6, 1996, when he drove his 1977 Chevy station wagon to a business that was under surveillance. Rojas was at this business at the time Martinez arrived. During the next few hours, Rojas came and went several times before he finally left with Martinez at 3:30 P.M. The two men were not followed. An hour later, however, they returned to the area under surveillance and then went their separate ways.

The next day, the task force agents prepared for their initial drug transaction with Rojas, a transaction scheduled for that afternoon at the La Quinta Motel in Beaumont, Texas. Sgt. Longoria checked into his room. Surveillance agents settled into their positions.

At approximately 3:15, the surveillance agents observed Martinez's station wagon as it drove into the parking lot of a McDonald's restaurant located across the street. Both Martinez and Rojas exited the vehicle. Martinez went inside the restaurant. Rojas went to the pay phone on the outside

wall of the McDonald's, placed a call, then joined Martinez inside.

Moments later, Sgt. Longoria received a call from Rojas's wife who told the Sergeant that Rojas was waiting at the McDonald's across the street. Sgt. Longoria proceeded to the restaurant and located Rojas. After the two exchanged greetings, Rojas introduced Sgt. Longoria to Mr. Martinez by saying in Spanish, "This is an associate of mine. In case I'm ever gone and you need something, this man will take care of you for me." Martinez reacted by stating his name.

Martinez finished eating. Then, the three men left the restaurant. Rojas and Sgt. Longoria walked to the motel while Martinez drove his car a short distance behind them. When the men reached the motel, Rojas gestured to Martinez indicating where to park. Rojas then removed a closed duffel bag from underneath a leather jacket located in the back of Martinez's station wagon. Rojas then entered Sgt. Longoria's motel room. Martinez remained outside, acting as if he was working under the hood of his car.

Inside the motel room, Rojas and Sgt. Longoria completed the drug transaction. Rojas opened the duffel bag and removed a taped-covered package. Once the tape was removed, Sgt. Longoria saw that the package contained about one kilogram of cocaine. Sgt. Longoria paid Rojas $16,000. Afterwards, Rojas and Martinez left Beaumont.

The government investigation of Rojas and his confederates continued for many months after this initial transaction. After February 7, 1996, however, Martinez never reappeared in that investigation. Even so, Martinez was indicted along with Rojas and the others, and he was convicted as a coconspirator.

## II.

Martinez argues that there is insufficient evidence to support his conviction as a coconspirator

3

in this drug transaction. In considering the sufficiency of the evidence, we view all of the evidence in the light most favorable to the jury's verdict, with all inferences to be made in support of that verdict.[2] The evidence is sufficient to uphold a conviction if a rational trier of fact could have found the defendant guilty beyond a reasonable doubt.[3] It is not necessary for the prosecution to exclude every reasonable hypothesis of innocence so long as a reasonable jury could find guilt established beyond a reasonable doubt.[4]

### III.

Martinez was convicted on two counts. First, he was convicted for conspiracy to possess with intent to distribute cocaine in violation of 21 U.S.C.§ 846. To prove this charge, the government must show that (1) a conspiracy to possess narcotics with intent to distribute existed, (2) the defendant knew of the conspiracy, and (3) the defendant voluntarily participated in the conspiracy.[5] The existence of a conspiracy may be inferred from the circumstances.[6] Of course, presence at the scene of the crime or association with a member of the conspiracy are not, by themselves, sufficient to show a defendant's voluntary participation in the conspiracy.[7]

Martinez was also convicted of possession with intent to distribute cocaine in violation of 21 U.S.C. § 841 (a) (1). To prove this charge, the government must show that the defendant (1)

---

[2]     *United States v. Landerman*, 109 F.3d 1053, 1067 (5th Cir. 1997).

[3]     *Id*.

[4]     *Id*.

[5]     *United States v. Bermea*, 30 F.3d 1539, 1551 (5th Cir. 1994).

[6]     *United States v. Gonzales*, 79 F.3d 413, 423 (5th Cir. 1996).

[7]     *Id*.; *Bermea*, 30 F.3d at 1552.

possessed the illegal substance, (2) knowingly, (3) with the intent to distribute it.[8]

In the present case, the evidence clearly established (1) the existence of a drug transaction between Rojas and Sgt. Longoria and (2) that Martinez transported Rojas and the drugs to the point of sale. The only question is whether Martinez knew about either the intended drug sale or the drugs he transported in his vehicle. Without this particular knowledge, he could not be a voluntary participant in this drug conspiracy nor could he be liable for possession with intent to distribute cocaine under the aiding and abetting theory offered by the government.

## IV.

Proving an individual's knowledge is a tricky task. Knowledge is ordinarily inferred from circumstances. In drawing these inferences, however, we are mindful of this court's past decisions holding that the government must show that the defendant did more than just associate with the wrong individuals or arrive in the wrong place at the wrong time.[9] The government must do more than prove that the defendant acted as a chauffeur or courier in the drug transaction.[10] The government must produce facts from which a reasonable jury could infer both the defendant's knowledge that drugs were being transported or sold and that the defendant's purpose was to aid that transaction.[11] When a defendant has participated in a role vital to the illegal activity in circumstances

---

[8]     *United States v. Ramirez*, 963 F.2d 693, 701 (5th Cir. 1992).

[9]     *Gonzales*, 79 F.3d at 423; *Bermea*, 30 F.3d at 1552.

[10]     *United States v. Gomez*, 776 F.2d 542, 549 (5th Cir. 1985) overturning a conviction when the government's proof, at best, showed that the defendant acted as a chauffeur to members of a drug conspiracy; *United States v. Gardea Corrasco,* 830 F.2d 41, 45 (5th Cir. 1987) overturning the conviction of a man who physically transported illegal drugs in suitcases because the government failed to establish that he knew the contents of those suitcases.

[11]     *United States v. Pruneda-Gonzalez*, 953 F.2d 190, 196 (5th Cir. 1992).

5

in which the coconspirators would not be likely to allow an innocent bystander to participate, this court has allowed the jury to draw the inference of the defendant's knowledge of and voluntary participation in the conspiracy.[12]

Turning to the facts of the present case, we find the evidence to be sufficient for a reasonable jury to conclude that Martinez knowingly and voluntarily participated in the Rojas-Longoria drug sale. Martinez was present at the sale and served as a courier, bringing the drugs and Rojas from Houston to Beaumont. There is more. Rojas introduced Martinez to Sgt. Longoria as an associate of Rojas who could take care of Longoria's needs if Rojas was unavailable. Because the only relationship between Rojas and Longoria was that of drug dealer and buyer, the logical inference to be drawn is that Martinez was an associate of Rojas in his capacity as a drug dealer.

Furthermore, during the actual sale of the drugs, which occurred outside the presence of Martinez, Martinez acted in a peculiar manner. He stayed outside, pretending to be working underneath the hood of his car. A reasonable interpretation of this activity is that Martinez was acting as a look-out during the drug sale and was merely attempting to blend into the surroundings by tinkering with the car. Finally, Martinez's presence at the La Quinta Motel bears upon his relationship to Rojas because a drug dealer such as Rojas probably would not bring an innocent bystander to a drug sale to stand guard outside the room. After considering all of this evidence, we find that the jury's guilty verdict is supported by the reasonable inferences that can be drawn from the evidence produced at trial. Therefore, we AFFIRM the jury's verdict.

---

[12] *Id.*